# MOLINE PLOW COMPANY *v.* WEBB.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

No. 1227.  Submitted October 19, 1891. — Decided November 9, 1891.

An action was brought upon three promissory notes with interest payable annually, each providing that if not paid when due it was to bear the rate of interest of the principal, " it being expressly agreed that in default of payment of interest when due the principal is to become due and collectible." Each note recited the fact that it was secured by a deed of trust executed to a named trustee on certain described property. The deed described the notes and declared: " provided, however, it is agreed that if at any time said interest shall remain unpaid for as much as ninety days after the same shall become due and payable then the whole debt as well as the interest shall become and be due and payable, and further it is understood and agreed that if said note first falling due shall remain unpaid thereafter for as much as six months then the whole debt is to be and become due and payable, and this trust, in either event, to be executed and foreclosed, at the option of said third party." It also contained a clause to the effect that if the money due on the notes was not paid " according to the tenor and effect of said notes in hand, and according to the terms, stipulations and agreements of this instrument," the deed should remain in force, and the trustee, or in the event of his death or refusal to act, " then at the request of the holder of said notes, the sheriff . . . may proceed to sell said described property, or any part thereof, at public vendue, to the highest bidder for cash, . . . and shall receive the proceeds of said sale, out of which shall be paid, first, the costs and expenses of executing this trust, including compensation to said trustee, or said sheriff for his services, and next to the said third party or holder of said note whatever sum of money may be due thereon, and the remainder, if any, shall be paid to the said parties of the first part, or their legal representatives." The statute of Texas provided that " actions for debt where the indebtedness is evidenced by or founded upon any contract in writing, must be commenced and prosecuted within four years after the cause of action accrued, and not afterwards." The case was heard by the court, and a general finding made. No bill of exceptions was signed. *Held,*

(1) The error in this case was one of law, apparent on the record, and need not have been presented by bill of exceptions;

(2) Construing the notes and the deeds as contemporaneous agreements, relating to the same subject matter, the limitation of four years under the law of Texas ran from the dates named in the respective notes, as the dates of maturity, and not from the date of the

default in the payment óf interest; otherwise, if the option given to the payee or holder by the deed of trust, to make them due upon such default, had been exercised by the payee or the holder.

THE court stated the case as follows:

This action was brought October 31, 1889, to recover the amount due on three promissory notes, each for the sum of two thousand dollars, executed January 21, 1882, by John A. Webb and J. W. Webb, composing the firm of John A. Webb & Bro., and payable, with interest from date at eight per cent per annum, to S. W. Wheelock or order on the first days, respectively, of November, 1885, 1886 and 1887. The original petition alleged that the notes prior to their maturity were endorsed, in due course of trade, to the Moline Plow Company, a corporation of the State of Illinois.

The first of the notes was in this form: "$2000. Austin, Texas, January 21, 1882. On or before the first day of November, 1885, we promise to pay to S. W. Wheelock, or order, at Austin, Texas, two thousand dollars, for value received of him, with interest from this date till paid at the rate of eight per cent per annum, said interest being due and payable annually, and if not paid when due to bear the same rate of interest as principal, it being expressly agreed that in default of payment of interest when due that the principal is to become due and collectible. This note is secured by a deed of trust, this day executed by us to E. A. Wright, trustee, on 10 feet off of the east side of lot No. 3, all of lot No. 4 and 23 feet off of west side of lot No. 5, all in block No. 68, on East Pecan street, in the city of Austin. John A. Webb, J. W. Webb, composing firm of Jno. A. Webb & Bro." The following payments were endorsed on the note: $6.48, October 19, 1883; $250, February 3, 1888; $250, September 15, 1888. The other two notes differed from the first one only in their dates of maturity.

The deed of trust referred to in the notes conveyed the real estate therein described in trust for the following purposes: "Whereas, the said first parties [Webb & Co.] are indebted to the said third party [the payee] in the sum of six thousand

($6000.00) dollars evidenced by three promissory notes of even date with these presents, executed by said first parties to said third party each for two thousand ($2000.00) dollars and due respectively on the first of November, 1885, the first of November, 1886, and the first of November, 1887, each bearing interest at the rate of eight per cent payable annually, on the said 21st day of January of each year; provided, however, it is agreed that if at any time said interest shall remain unpaid for as much as ninety days after the same shall become due and payable then the whole debt as well as the interest shall become and be due and payable, and further it is understood and agreed that if said note first falling due shall remain unpaid thereafter for as much as six months, then the whole debt is to be and become due and payable, and this trust, in either event, to be executed and foreclosed, at the option of said third party." It also contained a clause to the effect that if the money due on the notes was not paid "according to the tenor and effect of said notes of hand, and according to the terms, stipulations and agreements of this instrument," the deed should be void, and the trustee, or in the event of his death or refusal to act, "then, at the request of the holder of said notes, the sheriff . . . may proceed to sell said described property, or any part thereof, at public vendue, to the highest bidder for cash, . . . and shall receive the proceeds of said sale, out of which shall be paid, first, the costs and expenses of executing this trust, including compensation to said trustee, or said sheriff, for his services, and next to the said third party or holder of said note whatever sum of money may be due thereon and the remainder, if any, shall be paid to the said parties of the first part, or their legal representatives."

To the original petition (which described the notes generally without setting out either them or the deed of trust) the defendants demurred, and at the same time answered, denying all and singular its allegations, and pleading in bar of the action the statute of Texas providing that actions for debt, where the indebtedness is evidenced by or founded upon any contract in writing, must be commenced and prosecuted within

four years after the cause of action accrued, and not after-ards. 2 Sayles's Texas Civil Statutes, Art. 3205.

The plaintiff, by way of answer to the plea of limitation, filed a supplemental petition, exhibiting, as part of it, the notes in suit, the deed of trust, and the following communication from the defendants to its attorneys:

"Austin, Texas, Feb. 3, 1888.

"West & McGown, Austin, Texas.

"Dear Sirs: We will pay you $250.00 in cash and $250.00 on Sept. 15, '88, if you will stay suit on the Moline Plow Co. claims until Jan., '89. In the event of our failure to pay $250.00 in Sept., your obligation to stay till Jan. 1, '89, will be at an end. If we do, we are to have till Jan. 1, '89, to raise $1000.00 and take up the first note, due Nov. 1, '85.

"Jno. A. Webb & Bro."

The supplemental petition proceeded upon two grounds: 1. That the owner and holder of the notes never having exercised the option of declaring them due and payable in advance of the dates specified in them, namely, the first days of November, 1885, 1886 and 1887, limitation would not bar an action until four years after those respective dates. 2. That by the two payments of February 3, 1888, and September 15, 1888, the defendants recognized the notes as subsisting obligations; such payments, it was alleged, being made and accepted for the sole purpose of giving the defendants time to settle the notes, and being especially based on the agreement of February 3, 1888, which, the plaintiff insists, was both an acknowledgment that the debt evidenced by the notes was just, due and unpaid, and a promise to pay it. The latter proposition was based upon the statute of Texas, providing that "when an action may appear to be barred by a law of limitation, no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgment be in writing and signed by the party to be charged thereby." 2 Sayles's Texas Civil Statutes, Art. 3219.

By way of reply to the supplemental petition the defendants answered that they never in any manner acknowledged the notes sued on to be binding and subsisting obligations; that neither the notes nor the deed of trust gave plaintiffs any option as to the maturity of the notes ; that if plaintiffs had any option whatever it related only to the property described in the deed of trust ; and that no part of the interest on the notes was paid within ninety days after the same became due, whereupon the notes, both as to principal and interest, became due more than four years before the institution of this suit ; consequently, it was insisted, all right of action on them was barred by limitations.

A jury having been properly waived the case was heard by the court, which found that the notes sued on were barred by the statute of limitations of four years; that the new promise, dated February 3, 1888, applied only to the extent of $1000 from January 1, 1889, and no more; and to that extent was binding on defendants.

Judgment was accordingly rendered for the plaintiff against the defendant for $1090, with interest from the date of the judgment, and the plaintiff sued out this writ of error.

*Mr. Henry Wise Garnett* for plaintiff in error.

*Mr. Martin F. Morris* for defendants in error.

I. The findings of the court are conclusive in this case. Those findings are either general or special. On the part of the defendants, it is respectfully submitted that the findings are merely general findings of the issues in favor of the defendants, except to the extent of $1000; and general findings of a trial court are not and cannot be the subject of review here.

The issues made by the parties were three : 1st. The general issue, which need not be regarded here. 2d. The plea of limitations. 3d. The question of a new promise. The finding of the court upon the second and third issues was "that the notes sued on were barred by the statute of limitations of four years," and "that the new promise, dated February 3,

1888, applied only to the extent of $1000 from January 1, 1889, and no more." These certainly are general findings. They are not determinations of any special facts tending to determine the issues, but general determinations of the issues themselves; and, if they are general findings, the uniform and repeated decisions of this court are to the effect that they cannot be reviewed here, except on the rulings of the court made in the progress of the trial. *Norris* v. *Jackson*, 9 Wall. 125; *Cooper* v. *Omohundro*, 19 Wall. 65; *Otoe County* v. *Baldwin*, 111 U. S. 1; *Martinton* v. *Fairbanks*, 112 U. S. 670; *Santa Anna* v. *Frank*, 113 U. S. 339.

And as there are no bills of exceptions, and no rulings of the court during the trial in any way excepted to, there is no review possible in any aspect of the case.

II. But whether the findings are general or special, they are conclusive of the facts found. Only in the case of special findings can the court review the sufficiency of the facts found to support the judgment. *Mercantile Ins. Co.* v. *Folsom*, 18 Wall. 237; *Dickinson* v. *Planters' Bank*, 16 Wall. 250; *Boardman* v. *Toffey*, 117 U. S. 271.

Now, if these findings are special findings of fact, and they are to be taken as conclusively true, it cannot reasonably be contended that the judgment was not what it ought to have been. It is too plain for argument that the judgment could not have been otherwise than as it is.

III. We can scarcely suppose that this court will go behind the findings in this case, whether those findings are general or special. There is nothing on which to base a review of the correctness of those findings. The testimony in the case is not given; nor is there any statement of its purport. There are no exceptions to rulings of the court in the progress of the trial, and it nowhere appears what those rulings were.

But even if we supposed, in opposition to the plain statement of the record, that there was no testimony or evidence in the case, and that the case was submitted upon the pleadings alone and the exhibits which are made part of them, the findings of the court even then are right and proper. It is very evident that the whole alleged indebtedness, under the

special terms of the collateral agreement, had become due and payable when the first default of interest occurred, especially as the notes themselves by their terms were payable " on or before " a certain specified time — that is, at any time at the option of the maker. The holder could have brought suit for the whole indebtedness when that default occurred; and the courts of Texas have uniformly held that the statute begins to run from the time when the plaintiff could sue. *Walling* v. *Wheeler*, 39 Texas, 480.

And as to the alleged acknowledgment and new promise contained in a letter written by the defendants, under date of February 3, 1888, if that letter is to be taken as proved merely by being made an exhibit to a pleading, and if there was no other proof on the subject, it is evident that the court was entirely right in restricting the effect of this letter to the sum of one thousand dollars. It would be a most violent construction that would torture this letter into an admission of indebtedness and a willingness to pay to a greater extent than that ; for, under the decisions of the courts of Texas, (*Coles* v. *Kelsey*, 2 Texas, 541 ; *S. C.* 47 Am. Dec. 661, is the leading case on the subject), which are in entire harmony and conformity with the doctrine of this court upon the subject, an acknowledgment of debt, in order to amount to a new promise, must express willingness to pay, and certainly an expression of willingness to pay $1000 is neither an expression nor an implication of willingness to pay more than $1000.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

Although the record recites that the case was heard upon the pleadings and evidence, it does not appear that any oral testimony was introduced. No bill of exceptions was signed, and the finding by the court was general, stating only its conclusions of law. The defendant, therefore, contends that there is nothing before this court for review.

This position cannot be sustained. The notes, upon which the action is based, and the deed of trust filed with and made

a part of the supplemental petition — their execution not having been denied by the defendants under oath — are to be taken, without proof, as genuine instruments notwithstanding the general denial in the original answer of all and singular the allegations of the petition. 1 Sayles's Texas Civil Statutes, Art. 1265, and authorities cited in 2 Peticolas's Index-Digest of Texas Civil Cases, p. 1024. We have seen that the notes matured, respectively, on the first days of November, 1885, 1886 and 1887. As this action was brought within less than four years after November 1, 1885, the defence of limitation — although it was stipulated in each note that on default in the payment of interest at maturity the principal was to become due and collectible — is without foundation as to any of the notes, unless the principal of each note became due, without regard to the wishes of the payee or holder, either immediately upon default in paying interest, or after the expiration of ninety days from such default. Whether that view be sound or not depends upon the terms of the note and the deed of trust, and could not be affected by the testimony of witnesses. In refusing judgment for the entire amount of the notes, less the admitted credits, the court below necessarily proceeded on the ground that, independently of any option upon the part of the plaintiff, the notes became absolutely due and collectible at one or the other of the dates just mentioned, and consequently the action on them was barred. If this is error, it is one apparent on the record, and need not have been presented by a bill of exceptions. *Balt. & Potomac Railroad* v. *Trustees 6th Presby. Church*, 91 U. S. 127; *Bennett* v. *Butterworth*, 11 How. 669, 675; *Young* v. *Martin*, 8 Wall. 354, 357; *Clinton* v. *Missouri Pacific Railway*, 122 U. S. 469, 474.

We are of the opinion that the court erred in not rendering judgment for the full amount of the notes, less the sums admitted in the petition to have been paid. *Walling* v. *Wheeler*, 39 Texas, 480, is cited by the defendants in support of the opposite view. But that case only announces the general rule that limitation begins to run from the time the plaintiff could sue.

A leading case in the Supreme Court of Texas on this sub-

ject is *Harrison Machine Works* v. *Reigor*, 64 Texas, 89. That was an action upon promissory notes, payable at different dates, each containing an agreement to the effect that "a failure to pay that note when due should mature both notes." The note first falling due was not paid at maturity, and more than four years elapsed without suit. The question was presented whether limitation on the note last falling due commenced upon default in the payment of the one first maturing. It was held that it did, the court saying: "That the effect of the agreement was to authorize suit or give a right of action upon the last note at the same time that it could be commenced upon the first cannot be doubted. By the express terms of our statute of limitation it commences to run from the time when the cause of action accrues. It is immaterial from what cause a note becomes due so far as the right of the holder to enforce it by suit is concerned. . . . If the holder of a note may, at his option, treat the claim as due at a later date than the maker has agreed that it shall mature, and thus prescribe a different date at which it shall be barred, the evidence for its enforcement may be preserved, whilst that for its resistance may be destroyed, and thus the purpose of the statute be wholly defeated." After referring to *Hemp* v. *Garland*, 4 Q. B. 519, as sustaining that view, but recognizing the fact that that case had been somewhat criticised on the ground that the facts brought it within the principle that no one is bound to take advantage of a forfeiture, Wood on Limitations, 296, the court proceeds: "Admitting this to be a correct view, it cannot affect the present case. Here no option was left to the creditor; he was forced to treat the debt as due. It is true he was not obliged to bring suit upon it upon default in payment of the first note; neither is any creditor compelled to sue upon a claim so soon as it becomes due. But the statute was put in motion without consulting his wishes, by the very terms of the contract, which neither party had any right to change without the consent of the other. When suit is left to the option of the creditor, and he fails to bring his action for the whole debt upon the non-payment of one instalment, the debtor may possibly be authorized to construe this as an ex-

ercise of option in favor of postponing the maturity of the unpaid instalments. He may be justified in supposing that if he had incurred a forfeiture, the creditor had elected not to take any advantage of it, and may be chargeable with knowledge that limitation would be computed accordingly. But if the creditor cannot postpone the maturity of the debt, and hence cannot waive the forfeiture, if such it can be termed, the debtor cannot, of course, be charged with notice that he has done so."

Accepting this decision as giving the rule to be observed in the interpretation of the local statute, it remains to inquire whether, upon the mere default in payment of interest, or upon such default continuing for ninety days, limitation began to run, without regard to any option upon the part of the payee or the holder of the notes. In determining whether the payee or the holder of the notes was compelled to treat them as due and collectible upon such default, we are to look at the deed of trust, and treat it and the notes as one instrument, or as contemporaneous agreements relating to the same subject matter. The deed refers to the notes, and is itself referred to in each note, and may be examined to ascertain the real intention of the parties. Looking alone at the first clause of the notes, there would be some ground, under the case last cited, for holding, with respect to each note, that it would become due and collectible, without regard to the wishes of the holder, immediately upon default in paying interest. But this could not have been intended, because the deed of trust, referring to the several notes, provides for the whole debt, as well as the interest, becoming due and payable, if at any time the interest shall remain unpaid, after maturity, for as much as ninety days. We think, however, that the words in the deed of trust, " at the option of said third party," the payee or holder of the notes, refer not only to a foreclosure, but equally to the clauses in the notes and in the deed of trust relating to the maturity of the principal, in the case of a default in the payment of interest. In other words, the principal, in either of the contingencies named, might become due and payable in advance of the time specifically named in

the respective notes, at the option of the payeee or holder. If this be not the correct interpretation, it would follow that the payee or holder of the notes, notwithstanding the words "at the option of said third party," — which words are admitted to have given an option, at least, as to the foreclosure of the deed of trust — would be compelled to bring his suit for forclosure within four years from default in the payment of interest at maturity, or at least within four years after the expiration of ninety days from such default. We say this, because it was the law of Texas, when the notes in suit were executed, that if the debt secured by a mortgage or deed of trust was barred, the creditor was without remedy by foreclosure. *Ewell* v. *Daggs*, 108 U. S. 143, 147; *Eborn* v. *Cannon's Adm'r*, 32 Texas, 231; *Blackwell* v. *Barnett*, 52 Texas, 326. Subsequent decisions, it is true, may have modified this doctrine, but only to the extent of holding that, although an action for the debt may be barred by limitation, a court of ʒuity, the debt being unpaid, will not enjoin a trustee from executing a power of sale given in the deed securing the debt, *Goldfrank, Frank & Co.* v. *Young*, 64 Texas, 432; and that a sale by the trustee, under such a power, after the debt is barred by limitation, will pass a good title free from the lien of a subsequent purchaser who has notice of the incumbrance. *Fievel* v. *Zuber*, 67 Texas, 275, 278. In our judgment, the parties intended to give the holder of the notes an option after default in the payment of interest, not only to declare the principal due, but to foreclose the deed of trust, in advance of the dates of maturity named in the notes and deed. That option not having been exercised when or after the several defaults occurred, limitation began to run on the several notes only from their respective dates of maturity, as specified in them, namely, the first days of November, 1885, 1886 and 1887.

It results that plaintiff was entitled to judgment as claimed in his original petition. In view of this conclusion, it is unnecessary to consider whether the defendants made any acknowledgment or promise which, under the statute of Texas, as construed by the Supreme Court of that State, (*Gathright* v.

*Wheat*, 70 Texas, 740; *Krueger* v. *Krueger*, 76 Texas, 178,) would remove the bar of limitation, if we should assume that limitation began to run from default in paying interest, or upon the expiration of ninety days after such default.

> *The judgment is reversed, and the cause remanded with directions to grant a new trial, and for further proceedings consistent with this opinion.*

Mr. Justice Brewer concurs in the judgment.

Mr. Justice Gray did not take part in the decision of the case.