## DARBY v. MONTGOMERY COUNTY NAT. BANK OF ROCKVILLE, MD. *

### No. 5805.

United States Court of Appeals for the District of Columbia.

Argued Oct. 4, 1933.

Decided Oct. 30, 1933.

Rehearing Denied Feb. 5, 1934.

On Rehearing June 25, 1934.

VAN ORSDEL and HITZ, Associate Justices, dissenting.

*Writ of certiorari denied 55 S. Ct. 92, 79 L. Ed. —.

182

Lucien H. Mercier, of Washington, D. C., Bessie D. Darby, pro se, for appellant.

E. C. Brandenburg and Louis M. Denit, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellee, which is a national bank located at Rockville, Md., secured a judgment against appellant and her husband on a joint promissory note discounted by the bank at the request of the husband. Appellant's husband made no defense. Appellant, however, denied having signed the note or having authorized anyone to sign it for her. The case was submitted to the trial court on a written stipulation waiving a jury, and judgment went for the bank, and from this judgment this appeal is taken.

The record contains what purports to be a bill of exceptions, including a narrative statement of the evidence, but an examination of the same shows that no exception was taken in the progress of the trial to any ruling of the court, nor was one taken to the finding of the court at the conclusion. "A bill of exceptions is not valid as to any matter which was not excepted to at the trial. * * * And it cannot incorporate into the record nunc pro tunc as of the time when an exception should have been taken, one which in fact was not then taken." Fleischmann Const. Co. v. United States, etc., 270 U. S. 349, at page 357, 46 S. Ct. 284, 288, 70 L. Ed. 624.

The statute in the District of Columbia governing the procedure in the trial of a cause by a court on a waiver of jury and declaring the effect of the court's finding, either general or special, is the same as the statute applying to other federal courts outside the District, except that in the case of the latter the act was amended in 1930 (46 Stat. 486 [28 USCA § 773]) providing that an oral stipulation when entered of record shall be as binding as one in writing. See Act March 3, 1863, 12 Stat. 762, c. 91, section 72, tit. 18, D. C. Code 1929. See as to Federal District Courts, Act March 3, 1865, § 4, 13 Stat. 501, section 649 R. S., as amended by Act May 29, 1930, 28 USCA § 773. Under these sections the trial judge assumes, in addition to his judicial duties, the function of a jury, and passes on both the law and the facts. His finding on the facts, if general, has the same effect as the verdict of a jury, and the effect of the verdict of a jury is to foreclose all disputed, as well as all undisputed, questions of fact, unless challenged by a motion for binding instructions at the close of the case. Bank of Waterproof v. F. & D. Co. (C. C. A.) 299 F. 478, 481.

We have in the District of Columbia a companion statute (tit. 18, § 73, D. C. Code 1929, 31 Stat. 1201, § 71) regulating proceedings for the preservation of questions of law for review on appeal from the judgment of a court without a jury, and it provides that in such cases "an exception may be taken to any ruling of the court during the hearing and to such finding on the ground that the evidence was insufficient in law to justify it, and may be stated in a bill of exceptions as in case of a jury trial."

This section is intended to provide the requisites and manner of review in the appellate court. It insures re-examination of the rulings made by the trial judge in the course of the trial in every case in which an exception is duly taken to the ruling and afterwards embraced in a proper bill of exceptions, and it further provides the mode of challenging the sufficiency of the evidence and of obtaining a review if the decision is adverse. The usual and proper method to secure this benefit of the statute is by motion for judgment and an exception to its refusal. Only in this way can this court determine whether all the evidence is sufficient to support the judgment of the trial court.

Here we have neither motion for judgment nor exception to any ruling of the court below, and the record shows nothing more than that after the submission of the whole case to the judge without argument and after the decision or finding of the judge had been announced, counsel for appellant stated an intention to appeal.

It is, of course, important and desirable that there should be preserved to parties submitting a cause to trial the right and benefit of a review in an appellate court and perhaps it may be fairly said that, where the parties waive a jury, motions of form or technical exceptions to specific rulings are unnecessary and are useless formalities and that an intention to challenge the judgment, however expressed, is enough, but if this view

is to prevail, it should be by legislative enactment and not by action of the courts in setting aside rules and practices established by statute and approved and followed over a long period of years.

As there is no bill of exceptions in the present record which we may notice, there is nothing which we may review and therefore it follows that the judgment of the lower court must be and is affirmed.

Affirmed.

It is fair to counsel who argued the case in this court for appellant to say that he was not of counsel in the trial court.

### On Rehearing.

In June, 1931, Montgomery County National Bank of Rockville, Md., brought action against John Gardner Darby and Bessie D. Darby (his wife) to recover $12,324 claimed to be due on their promissory note held by the bank. Darby made no defense, but his wife (appellant), in August, 1931, filed her separate plea supported by affidavit in which she alleged she never signed or promised to pay the note, either jointly with any other person or severally, or in any way became a party to it. There was a stipulation waiving a jury. On the trial, the bank called John G. Darby as its first witness, and the note sued on was handed to him, and he was asked to say whether or not the signature thereon was that of his wife, but he refused to answer the question on the ground that his answer might tend to incriminate him, and likewise refused to answer when asked if he had presented the note to the plaintiff bank as bearing the genuine signatures of himself and his wife. The note was then introduced in evidence, her counsel not objecting, and Mr. Hunter, president of the bank, testified that he knew John G. Darby, who had been an assistant cashier in the bank for many years; that the note had been handed to him as president of the bank by Darby as being the genuine note of himself and his wife; that the note was for an amount aggregating the principal of several notes purporting to have been made by the same parties. The witness, however, did not know the genuine signature of Mrs. Darby, and was unable to testify that the signature on the note was her signature, but did identify a letter received by him, admittedly written by Mrs. Darby, as follows:

"Please send me a statement of our indebtedness to your bank, together with all information as to the original dates of notes, renewals, curtailments, collateral, etc. Also please advise me what action is absolutely necessary at this time.

"The next time you are in Washington, I would very much appreciate your calling to see me.

"Thanking you in advance for being explicit in this matter, and for a prompt reply, etc."

This concluded the evidence for the bank, and no motion for judgment was made on behalf of Mrs. Darby; and when called as a witness in her own behalf she testified that the note did not bear her genuine signature; that she had never signed it, or any other note to the plaintiff bank, nor had she ever authorized anybody to sign any note or notes in her behalf. She was asked to explain the letter quoted above, and said that she used the expression "our indebtedness" because she was one of the parties to the suit then being brought; that when she wrote the letter she had knowledge of the suit, and that the writing of the letter followed immediately after her husband told her he had been relieved of his duties at the bank; that she signed the affidavit of defense on August 3, some two months after the institution of the suit; and that up until that time she had not disclosed to the bank the fact that her signature on the note was forged. Thereupon the case was submitted without argument, and the following occurred:

"The Court: I find for the plaintiff, in the sum of the amount of this note with interest from date.

"Counsel for Mrs. Darby: We note an appeal, of course.

"The Court: I believe the proper practice is to file a motion for a new trial.

"Counsel: Under the circumstances I thought it was perhaps useless.

"The Court: Then you want judgment to be entered forthwith and appeal noted.

"Counsel: Yes."

Giving effect to all that was introduced in behalf of the bank to show liability on the part of Mrs. Darby, we think there was a complete failure of proof. The bank went into the trial bearing the burden of establishing the allegation that the note in suit was signed by Mrs. Darby or by someone authorized by her to sign it for her. The execution of the note was denied by plea and affidavit, and in such circumstances the universal rule is that the plaintiff has the burden of proving execution by the defendant of the instrument sued on (Sears v. Moore, 171 Mass. 514, 50 N. E. 1027; Austen v. Marzolf,

307 Pa. 232, 161 A. 72; In re Estate of Burke v. Sullivan, 247 Ill. App. 233; Engel v. Schloss, 134 Md. 72, 106 A. 169; Dever v. Silver, 135 Md. 355, 109 A. 67; Roth v. Knights of Joseph Bldg. & Loan Ass'n, 66 Pa. Super. Ct. 413; Conner v. Henry, 201 Iowa, 253, 207 N. W. 119; Fudge v. Marquell, 164 Ind. 447, 72 N. E. 565, 73 N. E. 895; Broadway Bank of Kansas City v. Stroud (Mo. App.) 51 S.W.(2d) 555; Civic Agency v. Kuhn (La. App.) 145 So. 564. The only thing that may be dignified by the name of evidence offered on behalf of the bank was the letter written by Mrs. Darby to its president requesting a statement of "our indebtedness," which she admitted referred to the indebtedness of her husband and herself, and her explanation was that she wrote this after she had been informed by her husband that he had been relieved of his duties at the bank, and it was stated at the bar quite frankly by counsel for both parties that the cause of his dismissal was a defalcation, for which at the time of the trial he was under indictment and which at the time of the hearing on appeal he had pleaded guilty to and for which he was then confined in prison. As we have seen, there was no evidence to prove, or tend to prove, that Mrs. Darby signed the note or authorized her husband to sign it for her, and there was, on the other hand, her testimony under oath that she did not sign it, and the testimony of her husband, when called as a witness by the bank, that he could not testify to the truth in relation to the signature without incriminating himself.

In these circumstances, judgment below should have gone for appellant, and we would have felt impelled to reverse on the ground the decision was clearly wrong except for the rule that where there is in the record no special finding, no motion for judgment, and no exceptions, there is nothing an appellate court can review, and that was the ground of our former decision.

Appellant thereafter filed a petition for rehearing, which we granted. She urged on this rehearing that under the act of Feb. 26, 1919, 28 USCA § 391 (amending section 269 of the Judicial Code), we should proceed to a decision on the merits notwithstanding the failure of her counsel to move for judgment and upon denial of the motion, to except. The amendment we have referred to is as follows: "On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

In Muentzer v. Los Angeles Bank, 3 F. (2d) 222, 223, the Seventh Circuit Court of Appeals held in a common-law action where a jury was waived and in which there were neither findings nor request for findings, nor motions made by either party at the close of the testimony, that the amendment could be invoked to save the litigant from the consequences of this oversight of counsel. But a contrary view has consistently prevailed in all of the other circuits where the question has arisen. Time after time it has been held that the purpose of the amendment was not to enlarge the review powers of the courts or to dispense with necessary motions and exceptions, but was solely aimed at preventing reversals for minor errors. See Storgard v. France, etc. (C. C. A.) 263 F. 545; Rosen v. U. S. (C. C. A.) 271 F. 651, 653; Feinberg v. U. S. (C. C. A.) 2 F.(2d) 955; Vance v. Chapman (C. C. A.) 23 F.(2d) 914; De Jianne v. U. S. (C. C. A.) 282 F. 737; Robilio v. U. S. (C. C. A.) 291 F. 975, 980.

In Brown v. Carver (C. C. A.) 45 F.(2d) 673, Judge L. Hand aptly remarks that the result makes form a fetish but holds that the purpose of the amendment was to contract and not enlarge the powers of review and this, he says, is confirmed by the report of the House committee on the adoption of the amendment.

Our own former decisions are in accord with those in the majority of the circuits. See Standard Oil Co. v. Allen, 50 App. D. C. 87, 267 F. 645; Carson v. Jackson, 52 App. D. C. 51, 281 F. 411.

The Supreme Court has noticed the amendment in Liberty Oil Co. v. Condon Nat. Bank, 260 U. S. 235, 245, 43 S. Ct. 118, 67 L. Ed. 232, and in Camp v. Gress, 250 U. S. 308, 39 S. Ct. 478, 63 L. Ed. 997. In neither was there occasion to construe the section with relation to its applicability in a case of failure to obtain special findings, or move for judgment, or for failure to except. In Ohl & Co. v. Smith Iron Works, 288 U. S. 170, 177, 53 S. Ct. 340, 77 L. Ed. 681, there was a reference to the amendment as covering a defect growing out of the initialing by the judge of the bills of exceptions. But in Fleischmann Const. Co. v. U. S., 270 U. S. 349, 357, 46 S. Ct. 284, 70 L. Ed. 624, and in Eastman Kodak Co. v. Gray, 54 S. Ct. 722, 724, 78 L. Ed. 1291 (decided May 21, 1934), the Supreme Court said in unmistakable language

that the general finding of the trial court is conclusive upon all matters of fact, and prevents any inquiry into the conclusions of law embodied therein, except insofar as the rulings during the progress of the trial were excepted to and duly preserved by bill of exceptions. In the last named case the circumstances were in all respects like those here, that is to say, there was a waiver of jury, evidence, exhibits, a decision by the lower court, a signed bill of exceptions (but no exceptions in the record to justify its signing); no special findings, and no ruling on any proposition of law. In that case, but not in this, there was at the conclusion of the trial a motion for judgment. But this, the Supreme Court held, was not sufficient to present any question for review unless accompanied by adequate exceptions. Whatever, therefore, may be our view on the merits of the case, we regard ourselves bound by these decisions to hold that in a civil case, "to obtain a review by an appellate court of the conclusions of law a party must either obtain from the trial court special findings which raise the legal propositions, or present the propositions of law to the court and obtain a ruling on them," and to bring up a question in relation thereto, other than rulings on the pleadings or the sufficiency of the complaint, an exception is obligatory. In this case there were, from beginning to end of the trial, no special findings, no peremptory motions, and no exceptions to the general finding or decision of the court. Hence there was nothing on which a bill of exceptions could be based and therefore nothing we can consider. That the result is one of serious hardship to appellant may not be denied, nor can we lose sight of the fact that our decision confirms a judgment against her which, in the light of the facts shown in the certificate of evidence, the bank was not entitled to have, and if we felt we were at liberty to do so, we should unhesitatingly order a new trial. (In saying this we are not unmindful of Mr. Justice Story's admonition that "infinite mischief has been produced by the facility of courts of justice in overlooking errors of form.") But in view of the emphatic and consistent adherence by the Supreme Court to the rule that a general finding of the trial court is, in the absence of motion for judgment and exceptions, conclusive upon all matters of fact, we feel we must adhere to our former decision.

No costs will be allowed on this appeal, and on proper motion our mandate will be stayed pending application to the Supreme Court for a review of our decision.

ROBB, Associate Justice, concurs in the result.

VAN ORSDEL, Associate Justice (dissenting).

Although confronted by an apparently insurmountable rule of civil procedure, I am forced to dissent from the opinion and judgment of the court. While the rule seems to have been adhered to with consistent uniformity by the Supreme Court, a different and more just rule has been announced in some of the states. Indeed, this court, early in its history, recognized that cases might arise in which, to avoid a palpable miscarriage of justice, the strict letter of the rule may be relaxed.

In Wilkins & Co. v. Hillman, 8 App. D. C. 469, the court was considering a case exactly similar to the instant case. There the trial justice certified to the accuracy of a transcript of the testimony taken before him, and the appellee conceded that the transcript contained all of the testimony upon which the order of the court was passed; but, as in this case, no exception to the judgment had been reserved, and there was, therefore, no bill of exceptions within the general rule of procedure in such matters. The court, after stating the general rule and the necessity of adhering to it, said: "But in view of the fact that there is a virtual agreement between counsel as to the testimony that was adduced in this case, and the ruling of the trial justice thereon, and that the trial justice has so authenticated the proceedings before him; and in view also of the fact that, at or about the time of the trial of this case by the trial justice below, the appellant applied to this court for the formulation of a special rule to direct the course of procedure in such cases, which rule we then declined to make, we deem it due to the cause of justice to hold, that the statement here of the trial justice certifying to the proceedings that were had before him and by him, which, under other circumstances, as was said by the Supreme Court of the United States, in the case of Snydam v. Williamson, 20 How. 433 [15 L. Ed. 978], would have to be regarded merely as 'a report of the judge who presided at the trial,' and not as a part of the record, should be considered as the equivalent of a bill of exceptions—although, as was said by the Court of Appeals of Maryland in the case, quite similar to the present, of Dumay v. Sanchez, 71 Md. 512 [18 A. 890], our decision in this instance is not to be drawn into a precedent for the government of future cases."

Whenever a modification of the rule has been indulged, the power has been justified by the exercise of sound judicial discretion; and it may be assumed that a court which exercises this power will be capable of restraining its abuse. The same rule, if strictly adhered to, applies equally to civil and criminal appellate procedure; but the Supreme Court has not hesitated to ignore the rule in criminal cases where in the sound discretion of the court the ends of justice demand it. Wiborg v. U. S., 163 U. S. 632, 658, 16 S. Ct. 1127, 1197, 41 L. Ed. 289; Clyatt v. U. S., 197 U. S. 207, 221, 25 S. Ct. 429, 49 L. Ed. 726; Crawford v. U. S., 212 U. S. 183, 194, 29 S. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392; Weems v. U. S., 217 U. S. 349, 362, 30 S. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705. It seems clear that if such discretion may be indulged in criminal cases no logical reason exists for denying it in a civil case, where, as in the present case, the ends of mercy and justice can be subserved in no other way. Besides, be it emphatically noted that the Supreme Court has never held that in an extreme case this discretion may not be exercised legally by an appellate tribunal.

Coming now to the consideration of what is actually before us in the instant case, it is agreed that the transcript, as in the Hillman Case, contains a full and true statement of what occurred in the court below. It is duly certified as such by the trial justice, not a mere abbreviated transcript of the testimony, but a complete statement of what occurred, and the facts on which the judgment was rendered. The only thing lacking, for which defendant should not be penalized, was the failure to follow with preciseness the technical legal procedure and to move for judgment at the conclusion of the trial—followed, of course, by exception if it was refused—

The note sued upon as an exhibit was before the court in the reargument of this case, and a comparison of the alleged signature of the defendant thereon with her true signature to the affidavit of defense, and the letter introduced by plaintiff bank, discloses to the inexpert, untrained eye a positive and gross forgery. It is not surprising that the husband refused to testify that it was her signature for fear of self-incrimination; yet, due to a technical oversight of her lawyer, her estate is to be swept away; and a court, convinced of the injustice, is helpless in the exercise of its broad judicial discretion to ignore this technical blunder and give this defendant a fair chance to protect her home by simply granting her a new trial.

The lasting humility imposed upon defendant and her innocent children by a criminal husband and father imposes sufficient burden upon them without adding to their total impoverishment through his criminal act. Can it be that justice is so blind that an insignificant technical error estops a court of justice from extending the relief here so convincingly demanded?

The judgment should be reversed and a new trial granted.

HITZ, Associate Justice (dissenting).

In concurring in Justice VAN ORSDEL'S dissenting opinion, I venture to add a word of my own based on a long experience in the trial court as attorney and judge.

I think it clear from the colloquy between the trial judge and counsel at the time judgment was rendered that this case took a course familiar enough in similar matters, and which was at the time considered by both the court and counsel to furnish a sufficient basis for review of the proceeding on appeal. The main purpose of waiving trial by jury is to get the greater speed and informality of procedure which the absence of a jury permits, and this, rightly or wrongly, is commonly deemed desirable by court and counsel. When the judge said, "I find for the plaintiff, in the sum of the amount of this note with interest from date," he made a special finding on the only issue before him, which was recorded, and to which his judgment gave due effect.

Thereupon counsel said, "We note an appeal, of course."

The Court: "I believe the proper practice is to file a motion for a new trial."

Counsel: "Under the circumstances I thought it was perhaps useless"—which it certainly was.

The Court: "Then you want judgment to be entered forthwith and appeal noted."

Counsel: "Yes."

In my opinion this procedure, while open to criticism as loose and informal, covered the necessary ground and was recognized and accepted as doing so by court and counsel. For it is beyond question that the judge considered that he had then disposed of all questions of fact and law submitted to him, and that he intended to allow the losing party an appeal from his decision. It is equally beyond question that the record filed here in pursuance of that appeal contains sufficient material to review the matter on its merits, but

the opinion of the court holds that this cannot be done because it was not sanctified by the proper rhetorical ritual. And this because the counsel did not say "I except" before he said "I appeal," though it was clearly intended and understood at the time by the judge and the counsel that the appeal so taken necessarily included an exception to the judgment so announced, as the greater includes the less.

If counsel, instead of taking his appeal from the finding and judgment as announced, had made certain formal but futile and unnecessary motions, and had then proclaimed an exception to their denial, his appeal from a repetition of the judge's announcement—or from a nod of the judge's head, which is probably all that he would have got—must have brought a reversal here instead of an affirmance.

This is putting too high a value on making two bites of a cherry. And the denial of a review here of a judgment acknowledged to be wrong here, because the trial court and counsel, in a common effort to dispatch business, omitted a futile formula of words, is to sacrifice the substance of justice to the shadow. I dissent from the judgment and opinion of the court.